Corwin, J.
The second section of the act of February 20,1851, provides that said road commissioners “ shall be governed in all their proceedings by the provisions of the act for laying out and establishing free turnpike roads, passed March 12, 1845, and the acts amendatory thereto, except so far as the same may be modified or changed by this act.” And the language of the 3d section of said act is as follows:
*130 “ That for the purpose of constructing said road and keeping the same in repair, the county commissioners of the counties of San-dusky and Wood are hereby authorized, annually, at their June session, for five successive years, to levy a tax,” etc.
There is no other provision in the said act for levying such tax by the county commissioners, either permissive or mandatory, and the first question presented for our consideration *is, whether the provisions of the third section of said act absolutely require such tax to be levied, or whether they merely give authority to the county commissioners to levy such tax at their discretion. It must be conceded that if the exercise of such authority is left by law to the discretion of the county commissioners, that discretion must be exercised in their own way, and upon their own responsibility; and when no act has been done by them under such authority, and no private right has intervened which requires protection, no other tribunal is authorized to interfere with and control that discretion, whatever differences of opinion might be entertained as to the propriety or impropriety of the action of said commissioners. And the great protection against the abuse of such discretion, or the failure or refusal to exercise it for the promotion of the public welfare, is found in the right of the public, by their own act, to change the officers in whom such discretion is vested.
But it is claimed by counsel for the relators that “ words of permission are to be construed as imperative in all cases where a public body or officers have been clothed by statute with authority to do an act which concerns the public interest, or the rights of third persons; ” and, indeed, in some of the authorities cited, the language employed would make the rule as broad as it is claimed by counsel; but such a rule must be considered with reference to the facts and circumstances of the case in which it is declared.
In the case of the Mayor of the City of New York v. Farge, 3 Hill, 612, the authority of the public officers had been so far exercised as to devolve upon them the obligation to continue its exercise for the paotection of the rights of third persons.
Under a general authority to construct basins, culverts, and sewers, in Pearl street, designed for conducting and carrying off the water running in and upon the same, and to keep the same in repair, the sewers had been constructed and water permitted to flow therein, and the question was whether the ^officers of the *131 city government, having exercised the power of constructing the sewers, were not also subjected to the duty of keeping the same in repair and free from obstructions for the protection of the adjacent property-holders. We think it was properly held in that case that such obligation had devolved upon the city authorities; but this case is clearly distinguishable from that. Hero, the commissioners of Sandusky county have done no act by which any-one may bo prejudiced. The legislature has “authorized” them to levy a tax for the construction and maintenance of a free turnpike road through their county. They have simply declined 10_ exercise the power thus conferred. They do not wish to construct such a road by such means. No such road has been constructed in said countpn No debt or liability has been created on account of it, and they have levied no tax for such purpose.
These relators, although called in the act of February, 1851, a body corporate, are subjected-to the provisions of the act of March 12, 1815, by which they are required to give bond at the discretion of the county commissioners, to take an oath of office, make annual statements to the office of the county auditor, and under certain circumstances, are removable from office at the pleasure of the county commissioners. With such provisions, it can hardly be said that the discretion of.the county commissioners is to be con-trolled and regulated by the discretion of the road commissioners.
These relators have no interest in the free turnpike road, except in so far as they may be considered as representing the interests of the public. It is in fact the public asking a peremptory mandamus from this court to compel their own agents to tax them, and it is a sufficient answer to this request to say that they may build such a road if they see proper, and pay for it in such mode as they may deem best; and if they prefer that it be done through the agency of their own commissioners, they have it in their power to select commissioners who, under the authority eqnferred by the legislature, will tax them to their satisfaction.
*With this view of the case, it is unnecessary to notice the other questions argued by counsel. It is unimportant to inquire whether the commissioners in this free turnpike road have a “ vested right” to have'this tax levied, which can not be interfered with by a change of our organic law, or whether the rule of taxation prescribed by these acts of legislation is consistent with the *132 rule provided by the constitution of 1851. Such questions would only arise if the commissioners should choose to exercise the powers conferred by the acts of the legislature, and it was sought to reetrain them from the exercise of such authority.

Peremptory mandamus refused.